FRANK M. VISNESKI v. JULIA VISNESKI.[1]

January 26, 1945.

No. 33,896.

[1]Reported in 17 N. W. (2d) 313.

*Cronin, Mitchell & Shadduck,* for appellant.
*John F. Shaughnessy,* for respondent.

YOUNGDAHL, JUSTICE.

Defendant appeals from an order denying an alternative motion for amended findings or a new trial. At the oral argument, it was agreed that the correct spelling of the name of the parties is "Visneski." The title has been amended accordingly.

Plaintiff brought an action against defendant for divorce on the ground of desertion. The court found that on October 27, 1927, defendant wilfully and unlawfully deserted plaintiff, and granted him an absolute divorce. The parties were married at Bradford, Pennsylvania, on July 4, 1921. As issue of the marriage, there was one child, a son, who was 21 at the time of trial. Since October 1927 the parties have not lived together. On several occasions between the date of the marriage in 1921 and the final break in 1927, the parties were separated. There is the usual conflict in the evidence as to who is responsible for the broken home. Accepting plaintiff's version, as we are required to do on appeal, the testimony shows that after the marriage the parties resided in Salamanca, New York, where plaintiff was employed by the Erie Railroad. Defendant's home was in Bradford, where she resided previous to the marriage. Bradford is 18 miles from Salamanca. Only seven months after the marriage, it appeared that there was to be trouble ahead in this matrimonial venture, for at that time defendant left plaintiff. Shortly thereafter, in January or February 1922, defendant came back, and the parties again lived together as husband and wife. In August 1922, defendant again left plaintiff and went to the home of her parents in Bradford. Plaintiff saw defendant on several occasions and attempted to persuade her to resume marital relations. She refused to do so unless plaintiff was willing to secure a job where she was residing. From August 1922 until March or April 1924, the parties were separated. Plaintiff then quit his job at Salamanca and went to Bradford to live with defendant. In September 1924, they moved to West Leyden,

New York, where they lived on a farm owned by defendant's father. In December 1924, when plaintiff's finances were in poor condition, he urged defendant to move with him to Salamanca so that he could go back to work on the railroad. Defendant refused to leave the premises of her parents. Plaintiff then returned to work on the railroad at Salamanca and remained there until June 1925, when he again went back to Bradford and secured a position. He remained there until the final separation in October 1927. At that time, plaintiff asked defendant to come back and live with him, but she refused to do so. A short time thereafter plaintiff left for Minneapolis, where he has since resided. The parties have not seen or heard from each other from October 1927 until the commencement of the action in 1943.

■ Defendant challenges the sufficiency of the evidence to support the finding of desertion, mainly because, in her opinion, there is lack of the corroboration required by the statute.[2] The extent of corroboration so required was fully discussed in Graml v. Graml, 184 Minn. 324, 238 N. W. 683, where we pointed out the purpose of the rule in this language:

"The main purpose of the rule is to prevent collusion. It had its origin in an effort to prevent parties from acting in concert to secure a dissolution of the marriage contract upon simulated and false grounds. When it appears that the reason for the rule does not exist in a given case, the rule itself, both under the common law and the statute, is greatly relaxed."

The Graml case was cited with approval in the recent case of Gerard v. Gerard, 216 Minn. 543, 13 N. W. (2d) 606.

It is apparent from the vigor with which the defense was conducted in the instant case that there was no collusion. Since the purpose of the statute is to prevent collusion, greater liberality is justified where the divorce is fervently contested. Locksted v. Lock-

---

[2]Minn. St. 1941, § 518.28 (Mason St. 1927, § 9905), providing: "Divorces shall not be granted on the sole confessions, admissions, or testimony of the parties, either in or out of court."

sted, 208 Minn. 551, 295 N. W. 402. We are not required to find categorical corroboration to satisfy the demand of the statute.

"* * * The corroborative evidence is sufficient if it tends in a general way in that direction. It need but tend in some degree to establish the fact sought to be proved [citing cases].

\* \* \* \* \*

"The statute requiring corroboration means something which leads the impartial and reasonable mind to believe the material testimony of the plaintiff is true." Graml v. Graml, 184 Minn. 325, 238 N. W. 683, *supra*.

In the case at bar, if plaintiff's testimony is true, he is clearly entitled to a divorce, assuming there is sufficient corroboration. Although his testimony as to dates and the length of the separations was inconsistent with certain allegations in the complaint and statements in an affidavit previously made by him, the trial court apparently was convinced that he was telling the truth. The probative value to be given to his testimony was for the lower court to determine. According to plaintiff's story, defendant left him on several occasions and refused to live with him where he had the best opportunity of employment. More than once plaintiff attempted without avail to have defendant come back to him and establish a home. She insisted on living in her home community or where her parents resided. Plaintiff made his final request in October 1927 at Bradford, where defendant was then residing, but she refused to live with him. Since then, admittedly the parties have not been living together. True, defendant denied deserting plaintiff and asserted that he refused to live with her. She contends that at all times she wanted to maintain a home. The testimony as to who is to blame for the separation is in irreconcilable conflict. It is one of those typical cases where the trier of fact could have found either way. But it does not help defendant that the evidence was such that the court might have denied the divorce, for the responsibility of determining conflicting fact situations rests with the trial court. By way of corroboration, plaintiff pre-

sented two witnesses who testified that he had lived alone in Minneapolis since August 1940. They knew nothing as to the cause of the separation. In addition to this, there was corroborative evidence from the circumstances and atmosphere of the case. To satisfy the requirement of the statute, corroboration need not be based upon oral testimony, but may be grounded on the circumstances and atmosphere of the case. Graml v. Graml, 184 Minn. 324, 238 N. W. 683, *supra.* At the time of trial the parties had not lived together for over 16 years. Even prior to 1927, there had been numerous separations. From the very beginning of the marriage, there were indications that it was destined to end in failure. It is clear that the opportunity is gone to rebuild this home. In the Gerard case, we said (216 Minn. 546, 13 N. W. [2d] 608):

"* * * Important, too, is the fact that these parties have not lived together for a period of more than 11 years. The family relationship is hopelessly broken."

That is the situation here. Fortunately, there are no minor children to suffer the serious consequences of a broken home. There were other circumstances providing the necessary corroborative atmosphere. Defendant vigorously and strenuously contested the action, but her real attitude is reflected in a letter written to plaintiff's counsel by her attorney in Pennsylvania suggesting that the divorce might be obtained without opposition, provided an adequate settlement were made. Thus, it can be reasonably inferred that her vigorous defense of the action was prompted not so much by a desire to prevent dissolution of the marriage as to secure monetary benefits. In our opinion, the evidence considered in its entirety was sufficient to justify the court in finding wilful desertion on the part of defendant.

■ Defendant makes application for an allowance to cover suitable attorneys' fees and necessary disbursements in connection with the appeal. In the Gerard case, 216 Minn. 543, 13 N. W. (2d) 606, under similar circumstances, we granted an allowance to a defendant who did not prevail in the trial court or here. We do not be-

lieve that defendant's appeal is without merit, and therefore we feel that a proper allowance should be made. She will be allowed $100 for her expenses on this appeal and $150 as attorneys' fees for services rendered in her behalf in this court. The order appealed from is affirmed, and it is ordered that defendant recover from plaintiff $250 for attorneys' fees and disbursements in this court. Neither party will recover from the other any costs or disbursements other than as here determined.

So ordered.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am unable to concur in the majority opinion. I do not believe there is sufficient corroboration to sustain the trial court's finding that defendant deserted plaintiff within the contemplation of our divorce laws.

The parties were married at Bradford, Pennsylvania, on July 4, 1921. A son was born of this marriage on June 9, 1922. This action was started in July 1943, shortly after the son's twenty-first birthday. The record indicates that on October 3, 1927, plaintiff was found guilty of nonsupport of his wife and child. Prior to that time the parties had separated several times, but after each separation had resumed living together. The Pennsylvania court ordered plaintiff to make payments of $15 per week for his wife and child upon his conviction as above set forth. Except for one or two weekly payments, he never complied with such order.

About November 1, 1927, plaintiff left Pennsylvania and came to Minneapolis, again leaving his wife and infant child to shift for themselves. He has lived in Minneapolis since that time. During all the time he has resided in Minneapolis he has failed to notify his wife of his location, failed to correspond with her, failed to request her to join him, failed to send her funds for her support, and failed to send support for his child. His child has grown to manhood and entered the armed services of the country without any help from his father. In support of his contention that defendant deserted him, plaintiff states that he did not hear from her from

November 1, 1927, until the action for divorce was started, and that she did not ask him for any support or alimony during said period. He concedes that at no time did he advise her where she might have addressed letters to him to make such requests, even if her previous experiences with him had not completely convinced her of the futility of this procedure. He contends she might have gained information as to his whereabouts by inquiring from his mother or father in his home town of Salamanca, New York, but there is nothing to indicate that such a request would have produced effective results even if she were obligated to engage in this method of searching for him.

I find no evidence of defendant's desertion except the uncorroborated statements of plaintiff to such effect. Section 518.28 (§ 9905) specifically provides:

"Divorces shall not be granted on the sole confessions, admissions, or testimony of the parties, either in or out of court."

I cannot escape the conclusion that under this statute the corroboration required must relate to the main issue involved, which here, of course, is which of the parties actually deserted the other. Testimony of witnesses submitted by plaintiff that they knew that plaintiff and defendant had lived apart while the former was in Minneapolis would corroborate defendant's testimony that plaintiff had deserted her as much as it would plaintiff's testimony that defendant was guilty of the desertion.

The "circumstances and atmosphere," in my opinion, lend no support or corroboration to plaintiff's claim of desertion. His assertion that on prior occasions defendant had deserted him is a mere conclusion, denied by her, and likewise unsupported and uncorroborated by other evidence. On the contrary, an examination of the record indicates that his failure to provide a home and the necessities of life for his wife and child was the cause and occasion of all such prior desertions.

The letter written by defendant's counsel after the commencement of the action, properly seeking some remuneration from plain-

tiff to compensate for his utter failure to care for his wife and child during the many years in which defendant bore the burden of maintaining herself and providing the child with food, care, shelter, and education, can scarcely be looked upon as "circumstances and atmosphere" lending support to plaintiff's contention that defendant deserted him in 1927. See, Chapman v. Chapman, 181 Iowa 801, 165 N. W. 96.

[1]Reported in 17 N. W. (2d) 353.